JOHN BAYARD and others *v.* THE GIRARD BANK OF PHILA DELPHIA.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.
*T. Slidell* and *Rawle,* for the plaintiffs.
*Halsey,* for the appellants.

GARLAND, J. The plaintiffs allege that one Charles McAllister of Philadelphia, drew a draft on them at thirty days sight, for $7,300, in favor of the defendants, which was accepted for the accommodation of the drawer, and that a consignment of Texas notes was made by McAllister to the plaintiffs, to meet the draft. It is further alleged, that the Girard Bank, in the event of the said Texas notes not realizing enough to cover the draft, agreed to guaranty the plaintiffs against the payment of the same, or in-

demnify them in case of payment. The defendants deny that there was any such guarantee, or *assumpsit*. It is further stated that the draft was taken from McAllister, in payment of a debt he owed the Bank, for his accommodation, and that the Bank is in no manner liable for the amount.

The evidence shows, that Nicholas Biddle had obtained a loan from the Girard Bank, on the pledge or deposite of certain railroad stock, the proceeds of which, not being sufficient to pay the debt, Texas notes to a large amount were deposited as a security for the balance. McAllister was the broker, or agent of Biddle in managing this business, and he gave his checks for the money, and was charged with them on the books of the Bank. He was credited with the amount realized by the sale of the railroad stock; and for the purpose of paying the balance, he, with the assent of Biddle and the Bank, withdrew the Texas notes, which were pledged, and forwarded them to the plaintiffs to be sold, and on the faith of them drew the bill in question, which was accepted and paid. McAllister in his testimony says positively, that it was understood and agreed on at the time the draft was drawn, that the defendants should provide the means of paying it, in case the Texas notes should not sell for enough to meet it. Lewis, the Cashier of the Bank, says that there was no such agreement or understanding. It is also shown, that, at the time the draft was drawn and sent to the Bank, a memorandum was sent with it, stating that the Bank was to provide for the draft, in the event of the Texas notes not being sufficient to meet it, which the President and Cashier refused to sign. When the plaintiffs accepted the draft they had no information from McAllister or the defendants, that the latter would be in any manner responsible to them for it. They accepted on the faith of the Texas notes and McAllister's responsibility, and for his accommodation, as is specially alleged. After they informed McAllister of the improbability of selling the Texas notes, he then informed them of the guarantee by the Bank, and told them to draw on him, or Biddle, or Lewis, the Cashier of the Bank, to raise the money they had paid. They drew on McAllister himself, who failed to pay, and the amount is now claimed from the Bank on the alleged guarantee.

The court below gave judgment for the plaintiffs, and the defendants have appealed.

This judgment is attempted to be sustained on two grounds, first, of the alleged guarantee, and secondly, of the money having been paid and expended by the plaintiffs for the use of the defendants.

Upon the first ground, we have to remark ;—that there is but one witness on the part of the plaintiffs to prove any guarantee of the draft, that is, McAllister the drawer, and his testimony is contradicted by Lewis, the Cashier of the Bank. The plaintiffs when they accepted did not do so on the faith of a guarantee. They were not at the time told, that if the Texas funds should prove insufficient, the Bank would protect them. They state that they accepted the draft for McAllister's accommodation, who was their correspondent in Philadelphia. But it is the duty of the plaintiffs to make out their case ; and it is now well settled, that when the facts are doubtful, judgment must be given against the party holding the affirmative of the issue. 2 Mart. N. S. 494. The attempt to prove a guarantee of the draft by the defendants is sustained by but one witness, without any corroborating circumstances ; and his testimony is contradicted by another witness, who we must suppose equally credible.

The second ground, on which the judgment is sought to be maintained, is not, in our opinion, more tenable than the first. There is no proof that the plaintiffs paid the draft to accommodate the defendants. On the contrary, they allege that they accepted it for the accommodation of the drawer, who appears on the books of the Bank to be a debtor to the amount of it, though the evidence shows that he was only nominally so. Biddle was the real debtor ; but this is not material, as a debt was really owing to the Bank, and the draft was given for the purpose of paying it. The defendants used no improper means to induce the plaintiffs to pay this draft ; and we see no such equity existing in their behalf, as to induce us to compel a refunding of money, paid for the accommodation of a correspondent and friend. The counsel for the plaintiffs have urged that McAllister was the agent and broker of the Bank. as well as of Biddle, and that all parties are bound by his acts. We do not think the evidence establishes that fact. He

was the agent of Biddle only, employed to transact his business with the Bank, and if he (McAllister) thought proper to put his own name forward to screen his principal, it was his own affair, and can have no weight in a contest between the plaintiffs and the defendants. If there is to be a loss sustained by one or the other party to this suit, we are of opinion that it should fall on the party who accepted for the accommodation of his correspondent, and who did not expect at the time that he did so, to hold the defendants in any manner liable.

The judgment of the Commercial Court is therefore reversed, and ours is for the defendants, with costs in both courts.